Aponte Jiménez, Juez Ponente
*815 TEXTO COMPLETO DE LA SENTENCIA
La parte demandada-apelante, Federal Insurance Co. of Puerto Rico, Inc., h/n/c Chubb Group of Insurance Co. (en adelante “el Asegurador”), nos solicita que revoquemos la sentencia declaratoria emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual dicho foro le resolvió que tenía la obligación de proveerle representación legal al demandante-apelado, Malgor & Company, Inc., (Malgor), en una demanda de daños y perjuicios instada en su contra por incumplimiento de contrato. Su argumento se basa en la interpretación que hace de las cláusulas de un contrato de seguro comercial suscrito entre las partes. Por los fundamentos que a continuación esbozamos, acordamos revocar la sentencia apelada.
De acuerdo al expediente ante nuestra consideración, los eventos procesales y hechos relevantes a la controversia que nos ocupa son los siguientes: Malgor presentó una demanda sobre sentencia declaratoria contra el Asegurador. Señaló que Supreme Cargo Services, Inc. (“Supreme”), había a su vez presentado en su contra una demanda por incumplimiento de contrato y daños y perjuicios. Adujo que en dicha demanda Supreme alegó que Malgor, a través de representaciones falsas o fraudulentas, le indujo a otorgar un contrato cuyo incumplimiento le causó daños a su reputación y a su buen nombre. A la fecha de los eventos alegados en la demanda de Supreme contra Malgor estaba vigente una póliza de seguro sombrilla (“umbrella policy”) la cual cubría la responsabilidad primaria comercial (“primary commercial liability”) y la responsabilidad comercial general (“commercial general liability”) de Malgor. En su solicitud de sentencia declaratoria, Malgor añadió que solicitó representación legal al Asegurador para la demanda presentada en su contra por Supreme conforme los términos del mencionado contrato de seguro comercial. Alegó, además, que no obstante, éste se negó a brindarle cubierta y representación legal porque los daños reclamados por Supreme en su demanda no estaban cubiertos por la póliza. Solicitó Malgor al tribunal que se le ordenara pagar los gastos de la representación legal necesarios para defenderse de la reclamación de Supreme.
El Asegurador contestó la descrita demanda sobre solicitud de sentencia declaratoria. En esencia negó que conforme al aludido seguro comercial tuviera la responsabilidad de brindar representación legal a Malgor o a cubrir los daños que a ésta le reclamó Supreme. Posteriormente, presentó una solicitud de sentencia sumaria. Expuso en lo pertinente que Supreme alegó en su demanda contra Malgor, entre otras cosas, lo siguiente:

“9. En febrero de 1995... Supreme... obtuvo la buena pro en una subasta efectuada por la Corporación Azucarera de Puerto Rico para suplir doce mil quinientas (12,500) toneladas de azúcar cruda de caña grado “E”... A tales fines la demandante [Supreme) y la Corporación Azucarera... suscribieron un contrato-denominado “Sales and Purchase Agreement, Raw Sugar Grade E”...

10. Mediante el referido [contrato]... la Corporación Azucarera se comprometía a comprar de Supreme... 12,500 toneladas métricas de azúcar de caña...

11. [M]algor... comenzó a hacer repetidos y persistentes acercamientos al demandante Supreme... para suplir a ésta el azúcar que... debía entregar a la Corporación Azucarera...

12. Luego de varias y reiteradas promesas verbales sobre su capacidad y habilidad, Malgor envió a 
*816
Supreme una comunicación escrita donde se hacen representaciones específicas de disponibilidad de azúcar en cantidad suficiente... para que Supreme pudiera cumplir con... su contrato con la Corporación Azucarera... A causa de lo antes dicho, Supreme cesó las gestiones que realizaba con otros suplidores.

13.... Se afirma y hace constar que dichas representaciones de Malgor eran totalmente falsas, por cuanto dicha demandada no tenía disponible como cuestión de hecho, cantidad alguna de azúcar para vender a Supreme. Las representaciones de Malgor fueron hechas en forma consciente y deliberada, con pleno conocimiento de la falsedad de dichos ofrecimientos y de que... no tenía en ese momento ninguna azúcar para la venta, por lo que dichas representaciones constituyen fraude o dolo y fueron hechas con la intención específica de despojar a Supreme de una cantidad sustancial de dinero o valores y/o frustrar [e]l cumplimiento del contrato entre Supreme y la Corporación Azucarera...

15.... Malgor le sometió a Supreme una serie de documentos... fraudulentos... Todo esto con pleno conocimiento... de que los documentos presentados no cumplían con los requisitos de ley.

16.... La demandada Malgor... engañó a [Supreme]... en lo referente a la disponibilidad y posesión del certificado de elegibilidad de cuota como parte de su intento de defraudar a Supreme. Estas representaciones... indujo [a Supreme]... a creer en ese momento de la buena fe y capacidad de... Malgor...

18.... Malgor representó que iba a financiar la transportación hasta Puerto Rico siendo... falso.

20. Como parte de la representación hecha por Malgor... a... Supreme... sobre la supuesta disponibilidad del azúcar para venta y entrega inmediata a... [la segunda, Malgor] refirió a [Supreme) a la co-demandada Golden Eagle Trade Associates como la entidad que se encargaría de asegurar el empaque y envío de la azúcar en el correspondiente punto de origen y de obtener los permisos necesarios para ello.

23. [La] representación de Malgor.. referente al financiamiento del azúcar entre el punto de origen y su arribo a Puerto Rico, era parte del esquema defraude perpetrado por Malgor..., por cuanto en ese momento ni malgor ni Golden Eagle... tenían la intención ni la capacidad económica para financiar el embarque...

41.... las actuaciones de los demandados provocaron que la Corporación Azucarera procediera a ejecutar la fianza de garantía de entrega... por la cantidad de $100,000...

42. Las actuaciones culposas de la parte demandada han ocasionado a la parte demandante los siguientes daños y perjuicios:

A. Por ganancias dejadas de percibir en la transacción descrita en esta demanda NOVECIENTOS MIL DOLARES ($900,000.00).

B. Por gastos incurridos por la parte demandante en sus negociaciones con la demandada y la Corporación Azucarera TRESCIENTOS MIL DOLARES ($300,000.00).

C. Por los daños al buen nombre y prestigio comercial de la demandante Supreme... TRES MILLONES DOLARES ($3,000,000.00).

D. Por daños provocados por la pérdida de la fianza... CIEN MIL DOLARES ($100,000.00). ”

A la luz de las alegaciones transcritas, el Asegurador argüyó que, contrario a lo que pretende Malgor, la *817 reclamación de Supreme no es por publicaciones difamatorias, sino más bien por actuaciones intencionales y culposas de fraude, dolo e incumplimiento contractual. Añadió en ese sentido que la Cobertura B (“Coverage B”) de la póliza de seguro sombrilla en cuestión no cubre los daños alegados en la demanda presentada por Supreme contra Malgor porque no constituyen daños personales producto de algún “oral or written statements publication of materials that slanders or libels a person or organization ” como lo establece el contrato de seguro. Asimismo, argüyó que por la reclamación en este caso tratarse de fraude, dolo e incumplimiento de contrato, está excluida de la cubierta de la póliza.
Malgor se opuso. Sostuvo, en esencia, que la demanda presentada por Supreme en. su contra alega que a través de representaciones falsas y fraudulentas le causó daños a la reputación y al buen nombre de Supreme. Añadió que sí aplica la “Cobertura B” respecto a daños causados por manifestaciones o escritos que difamen o calumnien a una persona. Ante nos su argumento se limita a intentar establecer que existe una reclamación potencial de negligencia en su contra. No indica qué hechos concretos alegados en la demanda constituyen las manifestaciones o escritos difamatorios, ni cómo las alegadas actuaciones de Malgor puedan colocarse dentro del ámbito de la póliza.
El foro de instancia promovido emitió sentencia. Concluyó, en síntesis, que, interpretadas liberalmente las alegaciones de la demanda presentada por Supreme contra Malgor, se puede colegir que las actuaciones fraudulentas aducidas son un método de difamación por el cual el primero reclamó daños a su reputación y buen nombre. Por ello, resolvió que era de aplicación la “Cobertura B” en cuanto a daños personales causados por manifestaciones o escritos difamatorios o libelosos. Ordenó al Asegurador proveerle representación legal a Malgor para defenderse de la demanda presentada en su contra por Supreme. Omitió, sin embargo, discutir lo relacionado con las exclusiones específicas de la póliza de seguro. Inconforme, el Asegurador acude ante este Foro. En esencia, señala que incidió el tribunal apelado al concluir que las alegaciones en la reclamación de Supreme sobre falsas representaciones, fraude, maquinaciones insidiosas y actuaciones culposas, alegadamente cometidas por Malgor, no son actos constitutivos de difamación o libelo cubiertos por la póliza de seguro.
De entrada, reconocemos que “[l]a obligación de la compañía aseguradora de asumir la representación legal surgirá cuando de una interpretación liberal de las alegaciones surja la posibilidad de que el asegurado está protegido por la póliza expedida, independientemente de cuál sea la adjudicación final del caso. PFZ Properties, Inc. v. General Accident Insurance Co., 94 J.T.S. 116, a las págs. 118-119; González v. The Commonwealth Insurance, 96 J.T.S. 63; Veca v. Pepsi Cola Bottling Co., 118 D.P.R. 661, 665 (1987); Fernández v. Royal Indemnity, 87 D.P.R. 859, 863 (1962). Ello es así, en parte, porque la obligación de un asegurador de brindar representación legal a sus asegurados es más amplia que la de dar cubierta. En algunas circunstancias el deber de asumir la representación legal de un asegurado existe aun cuando el asegurador no está finalmente obligado a indemnizar al tercero reclamante. PFZ Properties, Inc. v. General Accident Insurance Co., supra. ”
Ahora bien, cuando los actos de donde surgen los daños reclamados están claramente y sin ambigüedad excluidos de la póliza, no existe ningún deber por parte del asegurador de proveer representación legal al asegurado. Martínez v. Universidad Central, 97 J.T.S. 98, a las págs. 1224-1225; PFZ Properties, Inc. v. General Accident Insurance Co., supra. Esta determinación se realiza caso a caso luego de examinar las alegaciones o reclamaciones del asegurado y compararlas con el contrato de seguros pertinente. PFZ Properties Inc. v. General Accident Insurance Co., supra. Nos corresponde, pues, examinar liberalmente a favor del asegurado las alegaciones de la demanda presentada por Supreme contra Malgor y compararlas con el contrato de seguro comercial para determinar si las actuaciones por las cuales el primero le reclama daños a la segunda podrían estar cubiertas por la póliza emitida, de forma tal que justifique concederle representación legal.
*818 Malgor basa su reclamo de cubierta en la “Cobertura B” del contrato de seguros y la definición de daños personales. El contrato en cuestión dispone, en sus partes pertinentes, lo siguiente:

“Under Coverage B we will pay on behalf of the insured, damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury, property damage, personal injury, or advertising injury, insurance which takes place during the Policy Period of this policy and is caused by an ocurrence. We will pay such damages in excess of the Retained Limit Aggregate specified in Item 4d of the Declaration or the amount payable by other insurance, whichever is greater.

The following definitions are applicable to Coverage B only.

Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business, other than your advertising:

L...

2....

3....

4. oral or written publication of material that slanders or libels a person or organization. ”

Como se ve, entre otras cosas, la “Cobertura B” de la póliza sombrilla asegura daños personales, como los reclamados por Supreme por cualquier publicación oral o escrita realizada por Malgor en el curso dé sus negocios que libele o calumnie a una persona u organización. En ese sentido, conforme a la normativa expuesta, Malgor está cubierto por la transcrita cláusula de la póliza si las alegaciones de Supreme en su contra le imputan haber publicado algún material que libeló o calumnió al segundo.
En esta jurisdicción, conforme la ley que crea una causa de acción civil por daños y perjuicios por libelo y calumnia, libelo es “la difamación maliciosa que públicamente se hace en contra de una persona, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, tendiente a exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle en sus negocios; o de otro modo desacreditarle, menospreciarle o deshonrarle”. 32 L.P.R.A. sec. 3142; Jiménez v. Díaz Caneja, 14 D.P.R. 9 (1908). Calumnia es “la publicación falsa o ilegal, que no sea libelo, y que impute a una persona la comisión de un hecho constitutivo de delito, o tienda directamente a perjudicarle con relación a su oficina, profesión, comercio o negocios, o que, como consecuencia natural, le cause daños reales y efectivos. ” 32 L.P.R.A. sec. 3143. Se ha resuelto que cuando se trata de personas privadas los requisitos de una causa de acción por libelo o calumnia son los siguientes, la información difamatoria debe ser falsa; la publicación se hizo negligentemente; y se causaron daños reales. Villanueva v. Hernández Class, 128 D.P.R. 618 (1991); Torres Silva v. El Mundo, 106 D.P.R. 415 (1977).
Por más liberal que interpretemos las alegaciones de la demanda presentada por Supreme contra Malgor ninguna de ellas le imputa a Malgor haber publicado expresión escrita u oral falsa sobre Supreme tendiente a exponer a la segunda al desprecio público o para afectarle sus negocios. Nuestra lectura dé las alegaciones de la susodicha demanda sobre las representaciones falsas, fraude y maquinaciones insidiosas nos revela que las mismas se refieren a la capacidad de Malgor para suplirle a Supreme el azúcar que a su vez la segunda estaba obligada a entregarle a la Corporación Azucarera. Obsérvese que Supreme le reclama a Malgor haber representado falsamente que tenía disponible la cantidad de azúcar que la primera necesitaba para poder cumplir *819 su contrato con la Corporación Azucarera y también haber afirmado que tenía la capacidad para financiar la transportación del azúcar.
Malgor, según se alega, nunca entregó el azúcar a Supreme a tenor de los acuerdos contractuales contraídos. Como consecuencia, Supreme no pudo cumplir con su obligación hacia la Corporación Azucarera. Como se ve, no existe una sola alegación que le impute a Malgor haber publicado información falsa sobre Supreme y que solicite vindicar su reputación. La información falsa representada por Malgor, en todo caso, es sobre su propia capacidad para suplir el azúcar dentro del contexto de una acción por incumplimiento de contrato. Definitivamente, la demanda no le imputa a Malgor que haya publicado información alguna sobre Supreme. La causa de acción instada por Supreme es, pues, una por incumplimiento de contrato y no por difamación.
Por otro lado, la solicitud de indemnización de Supreme por daños a su reputación y buen nombre debe interpretarse a la luz de las alegaciones factuales de la demanda. Claro, que Supreme pudo haber sufrido daños de la naturaleza alegada, pero no a causa de una publicación de información libelosa o calumniosa en su contra, algo que nunca se ha alegado, sino, más bien, por no haber podido cumplir sus obligaciones hacia la Corporación Azucarera por culpa del supuesto incumplimiento contractual de Malgor quien alegadamente lo indujo a formalizar un contrato valiéndose de representaciones falsas. Adicionalmente a lo antes expuesto, el hecho de que la propia póliza de seguro emitida expresamente excluye cubierta por acciones exigiendo responsabilidad que surjan de un incumplimiento de contrato contribuye al debilitamiento de la tesis de Malgor.
Con ese panorama, la cubierta del seguro comercial emitido por el Asegurador en este caso referente a reclamaciones como resultado de un “oral or written publication of material that slanders or libels” a actuaciones que se le imputan a Malgor, ni los daños reclamados que de ellas se derivan. Claramente, los actos alegados en la demanda, además de no estar cubiertos por la póliza, están expresamente excluidos. Consiguientemente, el Asegurador no tiene el deber de proveerle representación legal a Malgor para que se defienda de la demanda presentada por Supreme en su contra por incumplimiento de contrato. Por tal razón, acordamos revocar la sentencia apelada y decretar la desestimación de la demanda sobre sentencia declaratoria presentada por Malgor.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 35
1. Un muy conocido diccionario legal norteamericano define libelo como “[a] method of difamation expressed by print, writings, pictures or signs. In its most general sense, any that is injurious to the reputation of another. A false and unprivileged publication of difamatory material. ” (Citas omitidas). Black's Law Dictionary, Sixth Edition, West, St. Paul, 1990, a la pág. 915.
2. “C. Under Coverage B, this insurance does not apply to:
Breach of Contract, Failure to Perform, Wrong Description. ”